of the United States Court of Appeals for the Fourth Circuit. Be seated. I want to welcome you all to the Fourth Circuit. It's good to have you here and we look forward to the arguments of counsel in the case of United States v. Patrick Andrew Groves. Ms. Thoma? Good morning, your honors, and may it please the court. When Mr. Groves appeared for his sentencing in February of this year, he had already been in pretrial custody as long as the low end of this unenhanced guideline. He could have and should have gone home. Instead, he's sitting in a federal prison today because the district court determined that his 2015 federal conviction for aiding and abetting his co-defendant's distribution of a controlled substance was a controlled substance offense under the sentencing guidelines. That decision was for three independent reasons, any one of which would suffice to require recent. First, it was overbroad by substance. There's no dispute here as to the fact that the framework, I believe, I think all that's in dispute is a purely legal question of whether Mr. Groves' convicted conviction, 821A121C, is divisible by controlled substance, by each individual substance. It is not. The statute on his face very clearly says he's scheduled under controlled substance. This court has confirmed that crack cocaine is not an element of a C offense. Other courts of appeals have said so, the solicitor general said so, and just last year, the Supreme Court said so. When a decision like that exists from the Congress, this court need only follow what it says, and that is enough to resolve that issue in Mr. Groves' favor. His 2015 conviction is overbroad by substance under United States v. Hope, simply because in 2015, at his sentencing, a Schedule I or II controlled substance is broader than it was or is in February 2022 when he was sentenced. In terms of the second reason, it was overbroad by conduct under United States v. Campbell, because 841A121C, just like the- He pled guilty to count five of that indictment, nine count indictment, which was distribution of a cocaine base. Aiding and abetting the distribution. Aiding and abetting the distribution of a quantity of cocaine base. And that's what you're saying, that's not a offense? No, because the inclusion of which particular Schedule I or II controlled substance it happened to be- And you're relying on your claim that aiding and abetting is different? Well, this particular argument is about United States v. Hope, and that's a separate one from the aiding and abetting. But you started out by- When you brief set up, you started out with Campbell helped you, dealt with the attempt offense. You're reorganizing here. In the reply brief, we sort of switched order to start with the Hope argument just to help with flow. So that- So that, before you leave that, the government says that that argument's subject to plain error review. No, we disagree with that. Well, you didn't raise it before. Mr. Groves in district court argued that his conviction was overbroad and that it wasn't a controlled substance offense under 4B1.2. Granted, after his sentencing occurred, their Hope came out and that added a third reason why it was overbroad. But even under any standard that I have seen from this court, including Robinson, including Hope, including the dissent in Hope, any of those standards, this is sufficient to preserve that third issue for plain error review because he had done what was required under this court's precedent. All he had to say was it's overbroad. He didn't have to say anything about de-scheduling drugs or anything else. Not according to this court's precedent. And I would also add that even if plain error review did apply, it's easily met here. I mean, it was met in Hope even when that was certainly much more new than it was here. Either way, we would certainly, certainly need a plain error review, even if that standard applied. Now, is this the position on hemp that you're arguing about? Yes. Okay. That's the- That's the overbroad. I've never presented to Judge Bailey. Overbroad, but correct. That's right. And that other- What's that other substance that they- I can't pronounce it. I struggle to pronounce it myself. I think it's isoprene. I'll warn to you, buddy. I can't pronounce it. But it's the hemp part that I can pronounce. You're saying by deleting hemp from the list, that undermines all of these controlled substance offenses around the country. How many million of them would there be? I don't know that I know a number around the country. I just can say that many circuits have now done that in the time that- since Hope came out and now. And we've cited several circuits that have absolutely done that without problem. So, this is certainly not any sort of- For example, the First Circuit in Abdulaziz applied that specifically to the guidelines and so did the Ninth Circuit in Batista. I mean, this is something that's pretty well established, I think, at this point, even though it was not until it came out. So, you're saying it's now well established that there can't be a 841A conviction for a controlled substance? I think it's pretty well established as the timing framework that when we are asking if a particular portion of the defendant's prior is overbroad, that it's pretty well settled at this point that we are comparing the element as it's defined by the law in place at the time of the conviction versus what that same element is at the time of sentencing. I don't think there's a timing framework that's become well adopted by the circuits. I would like to hear your argument based on Campbell. The second argument is that it's overbroad by conduct because 841A1 overbroadly, just like the West Virginia statute in Campbell, overbroadly criminalizes attempted transfers in the definition of distribution. Now, under Campbell and this court's recent decision in Locklear, most of the government's arguments on this point are foreclosed, we believe. The only question really for the panel now is whether the government has, quote, distinguished the opposite statutory language from that in Campbell, and we think it's failed to do that simply because an attempted transfer and an attempted distribution from 802.8 and 846 really covered the same. You're not talking about aiding and abetting now, you're on the scholar argument. You're giving up on aiding and abetting? It is third. She's responding because I asked her for her Campbell argument. I think that's why. We don't believe that there's any difference in the conduct that those two things cover, and I think that's true. Whether you look at a historical statutory definition that has been used for almost over 100 years probably in the older versions of the statutes, or whether you're playing meaning of attempted transfer, either way, it comes out the same. Those two things cover the same conduct. The only discernible difference is a defense that is irrelevant. If we accept your viewpoint, what happens to section 846? Nothing happens. An attempted drug offense, to be clear, was already excluded under Campbell. This does nothing new to 846. That was, I think, already pretty well established that attempted offenses, and I would include 846 in that, were already excluded under Campbell. I think that district courts, at least to my knowledge, have treated it that way as well. However, the government really hasn't argued anything about that, and neither have we. There is one point that I want to make about even if the government's interpretation was correct, and even if there was some minute difference in the conduct covered by an attempted transfer and an attempted distribution, we would still win because ultimately what Campbell makes clear is that 4B1.2B has a very clear definition, and it says that a controlled substance offense means distribution, and so anything that is not distribution, anything less than distribution, whether it's an attempted transfer or an attempted distribution, if it is less than distribution, it doesn't count. He was convicted of distribution. He was convicted of aiding and abetting the distribution. He was convicted of distribution. Aiding and abetting and the substantive offense are the same thing. That's what the law is. That's what the law is. One of those cases I wrote in Old Barefoot, uh, we went and we plowed this furrow, but it's been the law forever. The statute says aiders and abetters are punishable as principles. I mean, I would think that that would supersede anything you want to argue about in the guideline. That's the statutory provision in Section 2. It's been the law forever. It has indeed... You're an aider and abetter, you're punishable as a principle, so why you look at them as a principle? Aiding and abetting, distribution, they distributed cocaine, base. I would agree with your honor that for a long time it was foreclosed, and I would very briefly say... An attempt is a different thing. An attempt is not a completed offense. Aiding and abetting, a distribution is a completed offense. The reason why aiding and abetting, the comparison is different now, as it has been in all those prior cases, is because if you look at, for example... Walter, about what? ...Juanes Alvarez, the generic offense comparison, as the Supreme Court said in that case, is that you are taking the offensive conviction, which would include the aiding and abetting elements... So you're saying the Supreme Court changed Section 2? And on the other side of that comparison, because all 50 states and jurisdictions treat it that way, you would have a mirror image. You would have aiding and abetting elements and substantive offense elements. After United States v. Ward, for the guidelines purposes of 4B1.2, specifically just 4B1.2, that's no longer true, because what we have on the other side of that comparison is not a mirror image as it would be for something like a generic offense comparison in Juanes Alvarez, in Ali, this court's decision in Ali, in Camordo, in Dinkins, in anything like that. What we have now is two aiding and abetting elements, and substantive offense elements, and ordinary meaning of distribution, which is far more limited than it used to be, and that impacts how the result comes out. We think, for the first time since Ward, the comparison is different, the outcome is different. But I need to address one thing before my time is up, which is the 994 issue presented by the overbought by conduct argument. Before you do that, I'm a little confused by your argument. Are you saying that now the elements of aiding and abetting and acting as the principal are now different? No, I am saying that when you are making that comparison, for example, in Dozier, this court said that you must have both. You've got to have the elements of the, inchoate might be a bad term, but those elements must also be there along with, and I don't think that you can ignore them. I also think that in this particular case- I'm still not understanding what you say you're ignoring. If the elements for aiding and abetting and the underlying crime is the same, I'm not understanding what you are saying is different. And it may be that we have to agree to disagree on that point because I need to talk- I'm not disagreeing. I'm just saying- That's the law. You just said you can't disagree. I guess you can if it shouldn't be the law. We can't change it. I am saying that on one side of that comparison, you have the elements of aiding and abetting. And again, if you look at Mr. Grove's judgment order- Aiding and abetting, the elements of aiding and abetting are the elements of the offense. His judgment order- That's what the case- That's what all the cases- They don't even have to put aiding and abetting in the indictment. And they can get an aiding and abetting instruction and they're charged together. If you charge the offense, you charge aiding and abetting. And aiding and abetting is a principle. So I need to talk about 994-H, which is that first- We want to make clear that all of the arguments about that aside, there cannot actually be any 994-H violation in this case because 994-H by its own terms applies only to a sentence or a guideline range for a career offender. Mr. Grove's isn't a career offender, so 994-H does not apply in this case at all. There is no 994-H violation. Even if it did apply, it doesn't do what the government claims because even if 994-H binds the Sentencing Commission, we know from Dorsey that it cannot bind Congress. And here, we actually have congressional action because what was amended was the guideline. The commission first promulgated a version of the career offender definition that enumerated 841 offenses. It was in the text of the guideline. And two years later, it took that out. And because it had amended the text of a guideline in so doing, Congress had to review and approve that change. And so whether or not the Sentencing Commission can violate 994-H, Congress certainly cannot. It is cannot and does not bind Congress. I see my time is over. Hey, you've saved some time for rebuttal. Thank you very much. Ms. Wagner? Thank you, Judge King. Good to have you here. Good to be here. May it please the court, I'd like to start with the arguments in the order that Mr. Grove's counsel raised them, if that's okay with the court. Go right ahead. The dispositive question on the IO flu pain and hemp argument is whether 841 is divisible, which would allow this court to look at the 2015 indictment and plea colloquy from Mr. Grove's prior conviction. The answer to that question is that 841 is divisible. That includes B1c for at least three reasons. So what's our standard of review here? I understand opposing counsel's argument. She says she didn't have to raise anything specific in order to preserve it. I think you claim it's plain error. Yes, we believe it's plain error review. In hope, this court did not agree on the facts of that error review because while it is correct that Mr. Grove's raised the overall argument that his 2015 conviction was overbroad and a categorical mismatch to the controlled substance offense definition in the guideline, he did not raise this specific issue. We believe that plain error applies, but really what we are anchoring to is that there's no error here at all, but we do believe that plain error applies. But plain error is satisfied on the first prong of plain error, that we don't even get to the plain issue. If there's no error, that's what you say. Correct, Judge, yes, and that's our position. When you say 841 is divisible, is it divisible how many ways? At least it's divisible by means, but it's also divisible by drug type and drug quantity. Specifically, B1C is divisible in and of itself. It is not accurate to say that the elements of B1C are that the government must prove any quantity of any Schedule 1 or Schedule 2 drug because B1C itself covers more than Schedule 1 and Schedule 2 drugs. It covers GHB, which is a date-rape drug, which in and of itself is a Schedule 1, but if it's included in a FDA-approved pharmaceutical, it's a Schedule 3. B1C also covers flunutrazepam, which is another date-rape drug and a Schedule 4 drug. But more significant to the claims that Mr. Groves is arguing is that B1C is limited not just by the mandatory minimum, but I wouldn't even say limited by subparagraphs A and B. Those set out mandatory minimums. But subparagraph B sets a whole different statutory maximum, lower quantities of marijuana. So Mr. Groves is arguing that his B1C offense could have unfairly included hemp. But in order to even address that, the court necessarily has to look at the 2015 documents because Mr. Groves could not have been convicted of a B1C marijuana offense unless the government had not just alleged quantity, but also alleged... I thought he was convicted of a cocaine offense. He was, but he's making the argument that it could have been hemp. He could have been convicted. Well, but if he... I guess the question is whether we can go look at the indictment. And you've submitted the indictment. I don't know whether you filed it or not. You submitted it with a supplemental appendix. Yes, sir. The indictment, but the only part of it that's pertinent is count five. He apparently pled guilty to count five, which the only thing it refers to is cocaine-based. And the judgment order says he pled guilty. And was convicted of it, but it doesn't say cocaine-based. It doesn't say cocaine-based. It doesn't say Schedule 1 or Schedule 2. It could have been Schedule 3 GHB product. Which one of those two documents control? Do you read them together? What do you do? I think you read them together with the plea colloquy in which the government made a proper... Yeah, but that's not in the record. We have offered it in our supplemental appendix. Oh, that's in there? Oh, that's that transcript you gave us. Yes. All right. But it's filed as an appendix, but you never did make a motion to supplement the record. I believe we did, Your Honor. You did? We filed that motion with our brief at the... I thought you moved to file supplemental appendix. Did you move this up at the record as well? I don't... I'm not sure. See, there's three ways I see you could get this thing in. One is that we got it in the appendix, but it's not part of the record. And the appendix is supposed to be gone from the record. You could supplement the record under Rule 10E and get it enforced, or we could just take judicial notice of it. At least the orders and the indictment. Now, whether we could take judicial notice of the transcript, I guess, but you could move that too, maybe. I don't know. But if you read the transcript, then you get the... He was convicted of cocaine bags, just aiding and abetting the distribution of cocaine bags. And is that undermined by any of the stuff that's happened since then? But to be able to look at that transcript, do you agree that the statute has to be divisible? I believe in order for the modified categorical approach to apply... We have to apply the modified categorical approach to look at what? At the underlying documents from the 2015 case. Well, why would we need to look at the indictment? That's in the public record. But I don't... We can take judicial notice of it. Yes, Judge, but my understanding, and maybe I'm misunderstanding what... I thought we could look at the indictment to be able to consider the divisibility issue. I think, yes, I think this court made clear both in the majority opinion and the Judge Tucker's dissent and hope that you could look at those external sources. Is this where the Supreme Court says that the court can peak? Yes, Judge. In order to do that. So your argument, I take it, is that the structure of the statute itself lends to the modified categorical approach. Yes, and I believe that's consistent with what this court has done with respect to other state statutes that are structured in a similar fashion. In Dozier, it was the West Virginia distribution case. Statute in Ball v. Gonzalez and Ball v. or, I'm sorry, Cakalon v. Gonzalez, which Judge Gregory talks about in some depth in the Ward case. This court has previously concluded that the Virginia statute, which is set up with similar type penalty provisions, that these are divisible. I understand that you argue that plain error applies and also that there was no error. But if we find that there was error, does the government concede that it was not harmless error given the alteration of the sentencing guideline here and the fact that he's in prison now longer than he otherwise should have been if there was error? If there was error and it was plain, then I don't think there's an argument in the government's favor on harmless. Thank you. I do believe that we don't concede that the error was plain. Right, I understand that. Just briefly to address some of the cases that Mr. Grove cites, this court has never said that element of a B1C offense. All of the cases that they cite from this circuit, Tillman, Collins, and Dolan, the court is talking about not an 841 offense in and of itself, but either an 846 attempt or conspiracy in referring to what the government must prove under the baseline offense, which is not a B1C offense. The baseline offense, as the court explained in Tillman, is the 841A1 offense, which just says you can't manufacture, distribute, possess with intent to distribute a controlled substance. In the Dolan case, it wasn't even under Title 21. It was a travel and furtherance of a narcotics business under 1952, and the court said that there was no constructive amendment where the government didn't prove the charged LSD, but didn't prove as between the drugs, or what the drugs were, as between LSD and mescaline, because both are controlled substances. Your position is that the identification of the substance is an element? Yes, Judge. That means a controlled substance under Schedule 1 or something. You have to prove what kind of substance it was? Yes. Our position is that drug type is an element of a B1C offense, because if it were not... And in a trial, you have to submit that question to the jury. Correct, and that is how we charge them. I would say I haven't done a... I remember a case, and I might muse a little bit here, that we lost on appeal from a case I tried. Oh, there was a conspiracy to distribute... It was an 846 conspiracy to violate 841, I guess, or something, to distribute marijuana, and cocaine, and heroin, and it's called United States versus Quixie, I think, and we submitted a general verdict on the... And the jury didn't find specifically which drug types or type that they conspired to distribute, and the court ruled that they got the benefit of the least punishable, so they got the benefit of being convicted of marijuana. And essentially, they couldn't be... And they vacated a sentence, a trial given, I think, for cocaine or heroin. There's a question of whether it was a 20-year crime or a five-year crime, and they got the benefit of it, so we had to prove, and that... Has that ever changed, that kind of principle? I don't believe so. The most recent decision that I'm aware of is not a district court on a 2255 motion, United States versus Brown, relying on this court's decision in Rines in 1999. In that case, it was a multi... Like the case you've just described, a multi-object... Yeah, I was in the middle of that Rines case that went in bank, but the first part that you're talking about was decided by the panel. Only part of it went in bank, and that was based on the old Rines. The defendant is punished according to the least severe of the... The alternatives. That's right. Here, you only had one alternative, and that was cocaine-based. Yes, correct, Judge. And none of the cases that Mr. Groves cites from other circuits goes so far as he's asking this court to do, which is to ignore drug type. I'll talk about the 11th Circuit in Jackson. The report there is comparing Florida cocaine to federal cocaine. Holiday in the 9th Circuit is looking at Montana cocaine versus federal cocaine. Perez, same thing, Iowa State cocaine, federal cocaine. And in the Abdulaziz case from the 1st Circuit, Massachusetts marijuana compared to federal marijuana. And there was one other... You're still on one of the three arguments. Could you address another of the appellant's arguments, which is the one that's based on Campbell? Because I don't see any principled distinction between the statute here and Campbell and Locklear, even though Locklear is unpublished. It's after Campbell and cites it favorably. Our position is that 841 offenses are controlled substances under the guidelines, notwithstanding that transfer phrase. And this boils down to two things. One, an attempted transfer is not an attempted delivery. It's a completed crime. And to rule otherwise would render the guidelines inconsistent with 994-H and would render the federal 846 attempt statute surplusage. But secondly, even if Mr. Groves is right and 841 somehow embeds a incohate attempt, his argument is self-defeating because the definition of delivery to include actual constructive or attempted transfer is the same today as it has been forever. And so when Congress enacted 994-H and said, go make 841 a predicate career offender crime, at that moment in time, this language, attempted transfer, was there. So if there is this embedded attempt crime, what it means is that Congress has always intended for attempts to be covered. That does not only lose the issue for Mr. Groves, it also undermines the cases that bring us to this point. And we're not here to relitigate Campbell or Nassir and Pavis and those line of cases. You just don't think Campbell applies here. We don't believe Campbell. We don't believe that 841, that attempted transfer means an attempt. And the third... What does it mean? Well, here's what I think it means based on what... Attempt to transfer does not mean attempt to transfer. Attempt to transfer is not an attempted delivery. If you look at the three types of transfers in the definition... Does that make a difference whether... Go ahead. An actual transfer is where the giver has physical possession of the drugs and hands them over to the intended recipient. The intended recipient now has physical control. In a constructive transfer, the giver doesn't have physical possession of the drugs. What he has, though, is a means to facilitate the intended recipient's possession of the drugs, physical possession of the drugs. So the common example, the example we've offered is in the case of a physician writing a prescription. He doesn't have the drugs, but he's giving the recipient the means to obtain physical possession. And then the recipient goes and does that. What's the point of the word attempt? An attempted transfer occurs when the giver relinquishes his physical possession by... Two examples that the Dawson Court gave are he mails the drugs. He puts them in the post, but the postal inspector intercepts them before the recipient takes physical possession. Another example from Dawson is if the mid-level dealer drops off at different locations the drugs and before the street-level dealer can pick them up, law enforcement intercepts them. The recipient never takes physical possession, but the giver has committed a completed crime. Same is true in the context that we've offered. The example we've offered is when a physician writes a prescription, hands it over... So attempted transfers are completed crimes, but attempted deliveries are... Attempted distribution is not a completed crime? Attempted distribution occurs when the drug dealer has taken all of the steps to... They fixed a price, they fixed a meeting place, they go, they never hand over the drugs, they never even get that far because they're intercepted by law enforcement. Or they get wind that the cover is blown and they are going to back out of the crime. They're not going to go forward with the crime. That's an attempted distribution. They have not gone to the point of relinquishing physical custody of either the drugs themselves or the means of facilitating the recipient to have physical possession of the drugs. That's the distinction. It's most explicitly explained in the Dawson case, but it's also explained... That's the Third Circuit and it's also explained by the Sixth Circuit in Garth, Thomas, Booker, Miller, that line of cases followed the Habeas case. Can you say something about the aiding and abetting argument before we're done? Yes. What I would say about the aiding and abetting argument is that under well-settled principles of aiding and abetting liability, aiding and abetting an 841 offense is the same elements as committing an 841 offense. It is therefore a categorical match to the guidelines definition. This is a conclusion that is resolved by well-settled principles of this court and it resolves in favor of the categorical match, which also happens to be consistent with the way the guidelines treat aiding and abetting and the way Congress treats aiding and abetting. We have three bodies of law that treat aiding and abetting, aiders and abetters, as principles. It's set out explicitly in 18 United States Code Section 2 that aiders and abetters are punished as principles. The guidelines set it out explicitly in 2X2.1. It's also implicit in the way that if you compare the way the guidelines treat aiders and abetters principles and the way the guidelines treat attempt crimes and conspiracy crimes, these are the substantive defenses that those crimes are attached. I see my time is up unless the court has further questions. We would ask that the sentence below be affirmed. Thank you very much. Appreciate it. Ms. Thoma. Two primary points, your honors. First, I think that QC is fully consistent with our theory. In that case, as your honor described it, there was a general verdict. Therefore, the baseline B1C 0 to 20 penalty had to be applied because there was no finding of drug type or quantity, if I understood that correctly. They didn't find the drug type of which one it was. There were three submitted. The same thing in Ryan. The result was that it impacted the penalty. You got the benefit of the lesser penalty in both those cases. Pardon? I think that's fully consistent with our position here because we have never disputed that A and B offenses, drug type and quantity, are elements of an A and a B offense. That is undisputed. But the drug type here that he played guilty to was cocaine-based. We know that. You agree with that? He played guilty to cocaine-based. He was convicted of cocaine-based. He wasn't convicted of him or anything like that. It was with him or that other thing that we can't pronounce. That's consistent with this court's decision in Bill 2 because there's just no constructive amendment. Constructive amendment on what? There's no constructive amendment when it ultimately turns out to be proof of a different substance in the same schedule. That's not a constructive amendment either. Right, exactly. I mean, they do it. Ultimately, what matters here is that the Supreme Court has very clearly said that crack cocaine is not an element of a B1C offense. That's really all that's needed to resolve this question, irrespective of any conflicting circuit opinions. That's conclusive. Moreover, the concerns that caution us in being very careful about interpreting state statutes, as Justice Gorsuch said just this year in Taylor, just simply aren't present with federal statutes, that we can take this sort of statement as conclusive. I would also point this court to Note 13 of Pope. There's a collection of circuit cases there that specifically go through that say that when a statute has a controlled substance, that we shouldn't be interpreting that to find an actual element, a controlled substance element, without clear signals. There aren't clear signals of that here. In particular, I would highlight Najera Rodriguez v. Barr, which is a Seventh Circuit decision that runs exactly through this kind of analysis with an Illinois statute that is similarly structured with an A offense, a B offense, a C offense. However, I also want to talk about the reasons why this court- We don't have any state statutes involved here either. All we got is 841. It's just an example that isn't- Everything is 841 and it's all federal and it's all cocaine-based. The reason why this court cannot follow the Third or the Sixth Circuits is for facially obvious reasons, and it has to do with the circuit splits that are currently set up on more- actually two issues, really. The Third and the Sixth Circuit do not, as we do after Ward, define terms in the guidelines by reference to the Controlled Substance Act. And so this idea that somehow the guidelines must be consistent with how this court as long ago as in Mills and reaffirmed again in Ward, they've rejected the idea that they need to be consistent and sometimes aren't when there's not evidence that they are following that approach. The Sixth Circuit, for example, in United States v. Havis, at the conclusion of the en banc proceedings in denying the motion for rehearing en banc, Chief Judge Sutton correctly observed that there was a problem the parties hadn't identified at Havis, and that was that the federal statute 841 also included attempted transfers. And he said, quote, I see no reason to give the guidelines different meaning than that in the Controlled Substance Act, and therefore in future cases, the parties would need to look at the fact that these are mirrors, right? And very unsurprisingly, that is exactly what happened when the Sixth Circuit considered 841. It has, on one side of the comparison, you know, delivery slash distribution, including attempted transfers, and because their terms in the guidelines they interpret by reference to the Controlled Substance Act, all they're doing is comparing the same definition, and of course there's a match. So that's unsurprising that this court, of course, can't do that here because Ward says you have to use the ordinary... Before your time runs out, could you please respond to Ms. Wagner's argument that attempt to distribute and attempt to transfer are somehow materially different? No, I don't think that's true at all for the reasons in our reply brief, which is that regardless, there are two ways you can interpret that term in the statute. You can use the ordinary meaning or you can use the meaning that comes from how it's been defined in related statutes before, and under either approach, that certainly is not within either one. There is an intent under the common law definition. There is basically what all of those things are referring to is a change in possession and that we don't think there's really any difference, but even if there was, it's still less. Whatever it is is less than distribution and that's enough for us to prevail on that point, but ultimately we only need to prevail on one. Is your position that the 841 is indivisible? The government's position is it's divisible. Are we talking about controlled substances or by... I'm just saying that they said 841 is divisible and you say what? Your brief says it's not, it's indivisible. I am saying with reference to the whole hope issue, which I think is what your honor is getting at. No, you can say whatever you want. I'm talking about your brief. They say it's divisible. Ms. Wagner argued it's divisible. I wanted to give you a chance to brief says it's indivisible. We would not dispute that other parts of 841 are divisible by drug type and quantity, consistent with what I said earlier. I mean the penalties can run from five years to life, can't they? Or I don't know, maybe we get a death penalty on it. I don't know. But a B1C, section B1C, the element of a Schedule I and Control II substance just simply goes no other elements to divide it down into, which was exactly the point in Terry that the Supreme Court was making. Okay. And if it's divisible, we can look at the modified categorical approach. We can go look at all this other stuff. If it's divisible, yes, the court can use... If the court has no further questions, we would ask that you vacate and remand for resentencing without the two cases. Steve? Yeah, I don't have... Thank you very much. Appreciate your work. And thank you, Ms. Wagner, and we compliment both of you on your presentations. And at this point, we would, in the normal course, come down and reach you at council table and return to the bench for the next case. But we have dispensed with that process for three years now, almost. We will hope to do that next time you're here.
judges: Robert B. King, G. Steven Agee, Stephanie D. Thacker